MARIA BEESON *vs.* JOSEPH BEESON'S ADMINISTRATORS.

The act "concerning the entering of judgment bonds" is constitutional.
Construction given to that act.
The word *tenor* as used therein means only substance or import.
Construction of the constitutional restriction against *impairing the obligation of con-
tracts.*

RULE to show cause why judgment should not be set aside.

The judgment was entered, without appearance or declaration, by
the prothonotary of the late court of common pleas, under the provi-
sions of the act of assembly of 1830. 8 *vol.* 3. The entry was in
the following words:

"Maria Beeson *vs.* Joseph Beeson. D. S. B. $,2000. Judgment
entered on a bond and warrant of attorney dated March 15th, 1830,
in the penal sum of two thousand dollars, conditioned for the pay-
ment of one thousand dollars in one year from the date, with lawful
interest.

March 15th, 1830.   Judgment.

                                          Jos. ROBERTS, Pro.

Real debt, $1,000. Interest from March 15th, 1830, at 5½ per
cent. per annum. March 15th, 1830, 4 o'clock, P. M."

*Richard H. Bayard,* for plff. now showed cause. The question
is on a construction of the act of sixteenth January, 1830, (8 *vol.* 3)
under which this judgment was entered. The grounds of the mo-
tion I suppose to be, that a full copy of the bond and warrant of at-
torney is not set out upon the record; and secondly, that the act of
assembly varies the contract of the parties and is unconstitutional.

The act directs that the prothonotary shall "enter on the docket

the date and tenor of the instrument of writing on which the judgment may be founded." The word "tenor," as a legal term, has two meanings; it means substance and it means copy: it means copy in reference to *pleadings* and indictments; every where else it means substance merely. *Jac. Law Dictionary—Tenor.* Tenore presentium means the intent or meaning of the presents. In testaments, statutes and awards the construction shall always be such as the intent requires. 10 *Coke,* 576. Parliamentum, arbitramentum et testamentum are to be taken according to the intent of those concerned. I go further, and say that in the construction of laws words shall not be taken in a strictly technical sense, unless the intention of the legislature manifestly require it. 5 *Coke* 5, *a.* The maxim is loquendum ut vulgus, (4 *Coke,* 46 *b*); *attainted* by verdict construed to mean *convicted* by verdict. Now there is no word more technical than attainted: it always follows and is the consequence of a judgment; there could not therefore be a stronger case than that of applying an act which in its terms refers to a person attainted to one who is merely convicted.

The legislature directs the prothonotary to enter on the docket the *date and tenor* of the instrument. You cannot reject either of these words, but must give them both force. Now if tenor means an exact copy, it includes the date, and makes this specification of date foolish. It therefore does not appear that the legislature used this word in a technical sense; but the contrary is manifest.

On more general principles. The rules of construction point to the old law, the mischief and the remedy. The old law required the employment of an attorney at law to confess the judgment; it was, in practice, an act merely formal, and was regarded as unnecessary; this was the mischief: the remedy was to substitute the prothonotary in the place of an attorney, and authorize him to enter the judgment without a declaration. The act devolves a duty upon him as prothonotary, and he acts as the agent of the law, and not of the parties.

The right of the legislature to pass such a law cannot be doubted: it affects the remedy and not the contract; the lex fori and not the lex contractus. It is so with insolvent laws and all laws operating merely on the remedy.

But if the prothonotary has made a mistake in the construction of this law, and has entered the judgment informally, it is universally true that the court will amend the mistakes of their clerk. 8 *Coke,* 150; 1 *Term. Rep.* 782; 7 *Term Rep.* 207, *n;* 19 *Vezey,* 435. There is a great difference between amending mistakes arising from the act of the party and such as arise from the act of the clerk. Even where a clerk had entered a judgment de bonis propriis, which should have been entered de bonis testatoris, it was amended after error brought. The act of 1831 (8 *v.* 43) gives the greatest latitude of power in relation to amendments. It declares moreover that a confession of judgment shall be a release of all previous errors.

*Hamilton, ut amicus curiæ,* referred to two decisions in Pennsylvania on an act precisely similar to ours, where the word tenor was held to mean merely substance or import. 7 *Serg. and R. and* 1 *Rawle.*

*J. A. Bayard*, in support of the rule. *Tenor*, whenever employed in reference to a legal instrument, means a copy verbatim. In common acceptation it has a wider meaning, but as a legal term it is definite, well established and unvarying.

I care not by what law the case is to be governed; if the principle contended for substitutes one person to do an act in the place of another agreed upon by contract, that law is unconstitutional and void. A man authorizes an attorney by a power of attorney irrevocable to *appear* for him and confess judgment in favor of another: no judgment can be confessed by any other person, nor in any other manner, nor can any legislature authorize it to be done otherwise. The power of confessing the judgment is derived from the contract, and must be governed by the contract. The contract is itself unalterable but by the consent of both parties.

Then as to the amendment. I deny that the act of the prothonotary in the entry of such a judgment as this is an official act. The act points to him as an agent of the parties; the substitute of another agent. The court may amend misprisions of a clerk as such, but not when he acts in any other capacity. Suppose a power of attorney to the prothonotary and another jointly, executed by the prothonotary alone, would the court hesitate a moment to set aside such an execution of a power? Yet this goes not so far as the case before us, which is the execution by one person of a power specially delegated to another.

I admit the constitutional authority of a clerk to sign a judgment in a case depending before the court, but deny his authority to docket a case without the consent of the parties for the purpose of signing judgment.

The deft.'s administrators, for whom I appear, have no interest in the settlement of the question; they merely wish a decision to protect them in the administration of the assets. The question is however of importance in reference to other cases similarly situated, and the principle involved is one of consequence. It is on this account only that I have urged the propriety of vacating this judgment.

*R. H. Bayard*, in reply. The argument on the other side rejects all distinction between the law of rights and the law of remedies, a distinction which is well established. The latter may be altered at any time without affecting the contract.

Second. It assumes that the prothonotary in entering a judgment acts not as a clerk or public officer, but as the agent of the party, which I deny. But, if he is to be considered as the agent of the party, the contract authorizes him. The contract is made in subordination to the law and in reference to it. The law becomes a part of the contract. It says that if a man executes a bond with a warrant of attorney of a certain description, it shall be the duty of the prothonotary to enter a judgment on such bond. Whether, therefore, the prothonotary in entering judgment acts as the agent of the party or as a public officer, he is equally authorized by the contract and the law.

*Curia advisare vult.*

*Harrington, Justice.*

"The judgment in this case was entered by the prothonotary without any declaration or appearance; by virtue of a bond and warrant of attorney in the usual form, and under the authority as it is contended of the act of assembly of 1830.    That act makes it the duty of the Prothonotary "on the application of the holder of a bond in which judgment is confessed, or containing a warrant for an attorney at law or other person to confess judgment; to enter judgment against the person or persons who executed the same, for the amount which from the face of the instrument may appear to be due, without the agency of an attorney or declaration filed, with such stay of execution as may be therein mentioned, for the fee of one dollar to be paid by the deft., particularly entering on his docket the date and tenor of the instrument of writing on which the judgment may be founded, which shall have the same force and effect as if a declaration had been filed and judgment confessed by an attorney or judgment obtained in open court and in term time," &c.

The present application to set aside this judgment proceeds on the ground—First. That it is not authorized by, nor in conformity with the act of Assembly; and Second—That the act of assembly is unconstitutional, because it varies the contract of the parties and impairs its obligation.

The question arising upon this rule is one of great consequence in principle, as it involves an inquiry by one branch of the government whether another and co-ordinate branch has not exceeded its legitimate powers; and it is of much consequence in its immediate results in the case before us and many others similarly situated.    And, though the court will act with delicacy and much deliberation in determining whether an act of the Legislature shall be received and regarded as the law, binding upon them and binding upon all, or shall be treated as a nullity;—yet it is the right, and it is the duty of the judiciary to bring all acts of the legislative department to the test of the constitution, and keep them within the limits of its just authority.    For though it be the law making power, there are limits to the exercise of this power; though it give law to the judiciary and to all other departments, it is not omnipotent, but derives its power subject to specified restraints, from the paramount law, the constitutions first of the United States and then of this State.    And it belongs to the judiciary to decide whether these restraints have been disregarded, or in any manner violated; for, independant of the absurdity of leaving it to the legislature to decide upon the qualifications to their own power, it is the province of the courts to declare what is the law, and they cannot recognize and give the force of law to such acts of the legislature as are contradictory to and inconsistent with the law paramount.

By the constitution of the United States the several States are restrained from passing any "law impairing the obligation of contracts." This is one of the restrictions on legislative power; and it is one which has given rise to much discussion and which has frequently been the subject of judicial interpretation.    We are now to consider its operation on this case.    Is it violated by our act of assembly? Does that act by authorizing a prothonotary of the court to enter

judgment on such a bond and warrant of attorney as this, impair the obligation of this contract?    The contract is a bond for $2000—conditioned to be void on payment of 1000; with a warrant of attorney appended, authorizing (in the usual form) any attorney in any court of record in the State of Delaware or elsewhere, to appear for the obligor at the suit of the obligee, and after one or more declarations filed for the said penalty thereupon to confess judgment to the said obligee, &c.    Has the legislature the power to vary the mode of entering judgment on such a bond; to direct another person than an attorney to enter the judgment, without appearance or declaration, and does such direction *impair* the *obligation* of the contract?

The true import of these words in the constitution has been settled by judicial construction in several cases.    They have not been taken in their literal and fullest extent, but restrained by what was supposed to be the spirit and intent of the provision, and in conformity with public policy.    In the case of the *Farmers' and Mechanics' Bank* vs. *Smith,* the supreme court of Pennsylvania say, "when multitudes are affected by the construction of an instrument, great regard should be paid to the *spirit and intention*.    If the words *impairing the obligation of contracts* are to be understood in their greatest extent, the consequences are alarming.    For all acts respecting divorce, all acts of limitation, all acts by which private property has been taken for public use or for the use of chartered companies for roads, canals, &c. would be void, because in all these cases contracts are impaired."

A distinction has been taken and is established between a law impairing the obligation of a contract and a law modifying the *remedy* for enforcing the contract.    It is recognized by the supreme court of the United States in *Sturgis* vs. *Crowningshield, (8 Wheat. 1.)* and indeed it is upon this distinction that insolvent laws and acts of limitation are sustained.    And yet it is not very clear to my view.    If there be a contract for the payment of money, the means of enforcing the performance of that contract are of the very essence of the contract and constitute its obligation.    A limitation law wholly takes away my remedy, and not only *impairs* but *destroys* my contract if I do not sue in the prescribed time.    An insolvent law deprives me of my remedy against the person of my debtor; yet in the one case, the contract imposes an obligation of payment unlimited as to time; and in the other, confers the right of taking the debtor's person in execution.    If from public policy—the quieting of suits—the relief of honest but unfortunate debtors and consequent encouragement of industry and enterprise; or from a supposed conformity with the spirit and intention of the constitution, the highest tribunals in the country have so construed this restriction on the legislature as to still leave them this extensive power over the remedies for enforcing a contract, can it be doubted that the legislature is competent to direct the manner in which judgment shall be entered on a bond itself authorizing the entry of a judgment?

Another distinction has been taken equally important in its bearing on this case, and that is between the prospective and retrospective operation of laws varying or qualifying contracts.    It has been said that the constitutional restriction was merely designed to prevent

the states from the manifest injustice of taking away vested rights and impairing existing contracts; and that it was not designed to prohibit the states from making any prospective regulations in relation to the form, remedy or obligation of contracts. That the contract made *subsequent* to the law is made in *reference* to the law and subject to it, and adopts its provisions as a part of the contract itself. The parties themselves knowing the law in reference to the subject matter of their contract are bound to conform themselves to it, and not by their individual will to repeal the law of the land. Thus in *Blanchard* vs. *Russel* (13 *Mass. R.* 1.) Chief Justice Parker says "a law which is in force when a contract is made cannot be said to have that effect (of impairing the obligation of contracts;) for the contract being made under the law is presumed to be made in reference to it and the parties are legally conusant of it at the time. The contract in such case is not impaired by the law, for the law is a part of the contract." In *Mather* vs. *Bush*, (16 *Johns. Rep.* 246.) Spencer, Chief Justice recognizes the same law. "It cannot be controverted (says he) that the parties to a contract are to be deemed conusant of the laws which regulate, control or affect their contracts; and in construing a contract for the payment of money, thus entered into, it must be understood in reference to any existing law which bears upon it, and may modify or control it." Now before the contract in this case was entered into there existed a law of this state authorizing the Prothonotary, on the application of the holder of a bond containing a warrant to an attorney at law or other person to confess judgment, to enter judgment on such bond. With a knowledge of the law, and subject to it, the parties entered into a contract containing precisely such a warrant of attorney, they brought themselves within its operation and are bound by it. How can it be said that the law impairs the obligation of this contract; the principle contended for would make the contract repeal the law. On the contary the law becomes a part of the contract as much so as if its provisions were inserted in it. And there is no such absurdity as was supposed in the argument that the legislature should appoint an agent to appear and act for another without his consent, or should substitute one agent for another of the party's own choosing; the prothonotary acts not as the agent of the party but of the law, the officer of the court authorized by the constitution (art 6 sec. 23,) "to enter judgments according to law and the practice of the court." It is as much a clerical act on the part of the prothonotary as when he signs a judgment for want of a plea, the one being done by the express directions of the law, and the other under the rules and practice of the court, and both equally authorized by the constitution.

If I am right then in the opinion I have formed that this act of assembly is constitutional, it remains to be considered whether the entry of this judgment is so defective in point of form as to require that the court shall set it aside or treat it as a nullity. The act directs the prothonotary to enter the judgment "for the amount which from the face of the instrument may appear to be due"—"with such stay of execution as may be therein mentioned"—"particularly entering on his docket the date and tenor of the instrument of writing on which the judgment may be founded."—Though this act is loosely drawn it

is sufficiently apparent from it that whatever may be the legal import of its terms, their spirit and intention require only a statement of the import or substance of the bond. The specification of the date is entirely conclusive that the word tenor was not used in its strictly technical sense, but in its common and usual signification. And, though I would not run into loose conjectures about the intention of the legislature, I cannot reject a plain indication of intention if it was even contrary to the usual meaning of the words. But in this case it is not. The word used has two meanings and it is evident that the legislature used it in that sense in which it is commonly used. We have seen also that even in the construction of constitutional law the courts do not hold themselves confined to the letter but will look beyond it to the intent and spirit. And the plainest rules for the construction of legislative enactments direct our search not only into the spirit of the law but into the object and motive of the legislator. This law discloses its object. It was to avoid the necessity of employing an attorney at law to confess judgment in the case of a bond and warant of attorney in the common form. The necessity of employing an attorney for this purpose is held out in the law as an evil —it was the mischief to be remedied—and the remedy applied is in authorizing the prothonotary to enter the judgment without the intervention of an attorney. Could it be supposed, even if the words of the law did not forbid such a construction, that they intended in the use of the word tenor to surround this remedy with such a form of technical precision as to make it inoperation or only to be used at the greatest hazard. The object was to facilitate the entry of judgments; this construction would greatly increase the difficulty requiring as it does of the clerk a precision not before required either of attorney or clerk; and making the consequences of neglect in the slightest particular fatal to the judgment. But I rely chiefly on the words of the law without resorting to this inference, though I should be authorized to do so if necessary. I cannot understand the word tenor to mean a literal copy of the bond without rejecting the word date which has a suitable and sensible meaning if tenor be construed to mean the import or substance.

On the whole, though I consider the entry of this judgment very informal and loose, I cannot say that it is not a substantial compliance with the act of assembly; and I am for discharging the rule.

*Robinson, Justice,* concurred.

*Clayton, Chief Justice,* dissented and assigned his reasons at length. He stated the rule to be, that in the construction of statutes you are to take the words in their common acceptation, unless technical words be used, and then they are to be taken technically and according to their established meaning; he referred to *Shelley's* case to show that the intention of the testator would be sooner violated than that a word of art should be understood differently from its established meaning. *Tenor* is a technical word; its meaning is as well established in reference to legal instruments as the meaning of the word "heir" in testamentary dispositions; and as a technical word it invariably means an exact copy. If in pleadings it must be so taken (and this seemed to be admitted) why not in reference to the

entry of a judgment, which is the last stage and consummation of all pleadings.

He would not say that the law under which this judgment professes to be entered was unconstitutional; but it is a law in derogation of common right and ought to be construed strictly. No one will doubt that a man in making a contract and delegating a specific power has the right to select the agent for the execution of that power; and it is, at the least, a violent and harsh exercise of legislative power to deprive him of this right. It is a principle in the construction of statutes that they shall be rendered as consistent with the natural principles of justice and common right as possible; and he thought there was a plain interpretation of this law that would satisfy all its provisions, give effect to every part of it, and yet make it entirely consistent with the contract of the parties. It would avoid the hardship and the absurdity of substituting one agent and attorney in the place of another, of the party's own choosing, without his consent. The act provides that it shall be the duty of the prothonotary on the application of the holder of a bond "in which judgment is confessed, or containing a warrant for an attorney at law, *or other person* to confess judgment" to enter judgment thereupon. Now if these words *or other person* enter into the bond and form a part of the warrant of attorney there is no difficulty in authorizing the clerk to enter judgment, for the contract authorizes him under the designation of "other person." He would take the words conjunctively and not disjunctively, and confine the prothonotary's power of entering judgments strictly to the case of a bond and warrant of attorney authorizing in its terms "any attorney at law or other person" to confess the judgment. He thought this construction fully authorized by the terms of the act, and necessary to save, on the one hand, the rights of the parties; and to avoid, on the other, the arbitrary and oppressive exercise of power by the legislature which is involved in a contrary construction.

On this interpretation the entry of judgment in the present case is unauthorized. The warrant being to "any attorney of any court of record in the state of Delaware or elsewhere," does not extend to the prothonotary either by a special designation or in general terms.

Rule discharged.

*R. H. Bayard*, for plaintiff.
*J. A. Bayard*, for defendant.